People v Reddick (2018 NY Slip Op 05608)





People v Reddick


2018 NY Slip Op 05608


Decided on August 1, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 1, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
SHERI S. ROMAN
SANDRA L. SGROI
JOSEPH J. MALTESE, JJ.


2015-03823
 (Ind. No. 1792/13)

[*1]The People of the State of New York, respondent,
v
Corey Reddick, appellant.


Paul Skip Laisure, New York, NY (Melissa S. Horlick of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Sullivan & Cromwell LLP [Drew J. Beesley], of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Michael A. Gary, J.), rendered April 20, 2015, convicting him of criminal possession of a weapon in the second degree and assault in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
Contrary to the defendant's contention, under the circumstances of this case, he was not denied his right to a public trial by the Supreme Court's exclusion of his family members from the courtroom during the complainant's testimony (see People v Frost, 100 NY2d 129, 137; People v Edwards, 65 AD3d 1374, 1375; People v Stover, 36 AD3d 837, 837). Closure of the courtroom "is an exceptional authority that must be sparingly exercised'" (People v Kin Kan, 78 NY2d 54, 57, quoting People v Hinton, 31 NY2d 71, 76). The party seeking that remedy "must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure" (Waller v Georgia, 467 US 39, 48; see People v Frost, 100 NY2d at 137).
Here, an overriding interest was sufficiently established through evidence, and reasonable inferences to be drawn therefrom, of the complainant's genuine fear of testifying in the presence of members of his community, including the defendant's family members (see People v Frost, 100 NY2d at 137; People v Ming Li, 91 NY2d 913, 917; People v Dawson, 130 AD3d 750, 751; People v Edwards, 65 AD3d at 1375; People v Stover, 36 AD3d at 837). Moreover, the scope of the closure was no broader than was necessary. The Supreme Court limited the closure to the defendant's family members, some of whom the defendant and the complainant had contact with regarding the complainant's testimony, prior to the complainant's appearance in court (see People v Ming Li, 91 NY2d at 917). Finally, the record shows that the court, in directing the exclusion at issue, determined that no lesser alternative would protect the interest at stake (see Waller v Georgia, 467 US at 48; People v Echevarria, 21 NY3d 1, 15; People v Dawson, 130 AD3d at 751).
We disagree with the Supreme Court's ruling permitting a police detective to testify that, in his opinion, the defendant was the person depicted in surveillance video footage. Generally, [*2]"lay witnesses must testify only to the facts and not to their opinions and conclusions drawn from the facts," as it is the jury's province "to draw the appropriate inferences arising from the facts" (People v Russell, 165 AD2d 327, 332, affd 79 NY2d 1024). While, under the proper circumstances, the court has the discretion to allow a lay witness to express his or her opinion that an individual depicted in a surveillance video is the defendant (see People v Russell, 79 NY2d 1024), here, there was no basis for concluding that the police detective was more likely than the jury to correctly determine whether the defendant was depicted in the video (see People v Myrick, 135 AD3d 1069, 1074 n 2; People v Coleman, 78 AD3d 457, 458; cf. People v Franzese, 154 AD3d 706; People v Thomas, 139 AD3d 764; People v Watson, 121 AD3d 921; People v Alleyne, 114 AD3d 804; People v Ruiz, 7 AD3d 737). The detective had arrested the defendant more than two weeks after the crime, and, at that time, briefly interviewed the defendant. "There was no evidence that [the] defendant had changed his appearance prior to trial, and the record is devoid of any other circumstances suggesting that the jury—which had ample opportunity to view [the] defendant—would be any less able than the detective to determine whether [the] defendant was, in fact, the individual depicted in the video" (People v Myrick, 135 AD3d at 1074 n 2; see People v Coleman, 78 AD3d at 458; cf. People v Russell, 79 NY2d 1024).
Nevertheless, the error was harmless. The evidence of the defendant's guilt without reference to the error—which evidence included an identification by the complainant, who was familiar with the defendant, and the defendant's statements to law enforcement officials—was overwhelming, and, particularly given the limiting instruction provided by the Supreme Court, there was no significant probability that the error might have contributed to the defendant's convictions (see People v Crimmins, 36 NY2d 230, 241-242).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
SCHEINKMAN, P.J., ROMAN, SGROI and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court